IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMIAH P. J.,[1]　　　　　　　　　　　　6:18-cv-00440-BR

　　　　Plaintiff,　　　　　　　　　　　　OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

　　　　Defendant.


**KATHERINE EITENMILLER**
**BRENT WELLS**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

　　　　Attorneys for Plaintiff

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case. Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**KATHERINE B. WATSON**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 22
Seattle, WA 98104-7075
(206) 615-2139

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Jeremiah P. J. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed his applications for SSI and DIB on June 19,

2014. Tr. 167-72.[2] Plaintiff alleged a disability onset date of January 2, 2014. His applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on October 31, 2016. Tr. 45-72. At the hearing Plaintiff amended his onset date for his DIB application to December 31, 2009. Tr. 53. Plaintiff and a vocational expert (VE) testified. Plaintiff was represented by an attorney.

On December 22, 2016, the ALJ issued an opinion on Plaintiff's SSI application in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 33-44. On December 28, 2016, the ALJ issued an opinion on Plaintiff's DIB application in which she found Plaintiff was not disabled before his date last insured, and, therefore, he is not entitled to benefits. Tr. 36-40. Pursuant to 20 C.F.R. § 404.984(d), those decisions became the final decisions of the Commissioner on January 8, 2018, when the Appeals Council denied Plaintiff's request for review. Tr. 1-7. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

**BACKGROUND**

Plaintiff was born on April 20, 1979. Tr. 167. Plaintiff was 37 years old at the time of the hearing. Plaintiff graduated

---

[2] Citations to the official transcript of record filed by the Commissioner on November 28, 2017, are referred to as "Tr."

3 - OPINION AND ORDER

from high school with a "modified diploma." Tr. 472. Plaintiff has past relevant work experience as a security officer. Tr. 22.

Plaintiff alleges disability due to a developmental disability, cerebral palsy, spinal-cord damage, high blood pressure, gout, plantar fasciitis, asthma, and hearing problems. Tr. 73.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 19-21.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

**DISABILITY ANALYSIS**

**I.  The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1),

416.920(g)(1).

## ALJ'S FINDINGS

At Step One of the SSI decision the ALJ found Plaintiff has not engaged in substantial gainful activity since his June 19, 2014, application date. Tr. 14.

At Step One of the DIB decision the ALJ found Plaintiff did not engage in substantial gainful activity "during the period from his alleged onset date of December 31, 2009, through his date last insured of December 31, 2009." Tr. 38.

At Step Two of the SSI decision the ALJ found Plaintiff has the severe impairments of bilateral plantar fasciitis; lower extremity neuropathy; reactive airway disease; migraines; irritable bowel syndrome with diverticulosis and duodenitis; borderline intellectual functioning; "major depressive disorder vs. adjustment disorder with depressed mood; specific learning disorders with impairment in spelling, math, and written expression"; insomnia; and an anxiety disorder. Tr. 14. The ALJ found Plaintiff's hypertension, colon polyps, hyper-cholesterolemia, gout, sleep apnea, low back muscle pain, "a possible mild neurocognitive disorder," attention-deficit hyperactivity disorder, and "possible autism" are not medically determinable impairments. Tr. 14-15.

At Step Two of the DIB decision the ALJ found Plaintiff had

8 - OPINION AND ORDER

the medically-determinable impairment of asthma through his date last insured.  The ALJ found Plaintiff did not have any impairment or combination of impairments that significantly limited [his] ability to perform basic work-related activities for 12 consecutive months through his date last insured.  The ALJ, therefore, concluded Plaintiff was not disabled before his date last insured and denied Plaintiff's DIB application.  Tr. 38.

At Step Three of the SSI decision the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 15.  The ALJ found Plaintiff has the RFC to perform a range of light work with the following limitations:  Plaintiff can stand or walk for two hours in an eight-hour workday; can sit for six hours in an eight-hour workday; can occasionally stoop, kneel, balance, crouch, crawl, and climb stairs and ramps; can understand, remember, and carry out "no more than simple, routine instructions that can be learned within 30 days; must avoid climbing ladders, ropes, and scaffolds, exposure to respiratory irritants, and "tasks requiring math and language skills greater than GED level 1"; is "limited to isolated work settings that involve only occasional public contact, and no direct work with the public"; can "tolerate occasional direct co-worker interaction, but must avoid

cooperative work tasks"; and can "tolerate occasional supervisor contact."  Tr. 17.

At Step Four of the SSI decision the ALJ concluded Plaintiff cannot perform his past relevant work.  Tr. 22.

At Step Five of the SSI decision the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 22.  Accordingly, the ALJ found Plaintiff is not disabled.

### DISCUSSION

Plaintiff contends the ALJ erred when she (1) gave only "partial weight" to the lay-witness statements of Plaintiff's mother and sister; (2) did not fully credit the opinions of examining psychologists Steve Pethick, Ph.D., and Scott Alvord, Ph.D.; and (3) "dispos[ed] of [Plaintiff's] DIB claim at step two."

**I.  The ALJ did not err when she partially rejected lay-witness statements of Plaintiff's mother and sister.**

Plaintiff alleges the ALJ erred when she gave only "partial weight" to the lay-witness statements of Plaintiff's mother and sister.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*,

10- OPINION AND ORDER

236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

    **A.    Lorena C.**

    Plaintiff's mother, Lorena C., states in her September 29, 2014, Adult Function Report that Plaintiff has some problems with personal hygiene. Specifically, Plaintiff does not bathe often enough and forgets to brush his teeth. Tr. 261. Plaintiff's mother notes Plaintiff also needs to be reminded to take his blood-pressure medication; he needs specific, simple, clear directions in order to do chores or yard work; he took three years to learn to drive; and he does not follow written instructions well. Tr. 262-65. According to Plaintiff's mother Plaintiff's pain prevents him from sleeping well, and he cannot "lift much or do much walking because of his back." Tr. 265. Plaintiff's mother states it is difficult for Plaintiff to find a job because "when they find out his mental limitations they let him go." Tr. 260. Plaintiff's mother notes Plaintiff gets along "very well" with authority figures, talks to two friends every other day on the telephone and often "rides around with his

friends," and is able to fix himself easy meals.

In a November 15, 2016, letter Plaintiff's mother stated Plaintiff has never been able to clean house independently, and she "ha[s] to tell him what to do step by step, and how to do it." Tr. 347. Also, if Plaintiff's mother "is not on him at all times [Plaintiff] could go a week without brushing his teeth." Tr. 347. Plaintiff's mother noted it took her "over a year to teach [Plaintiff] to remember to take his medications." Tr. 347. According to Plaintiff's mother Plaintiff has two friends that he met in school who he sees once a week, but he does not make new friends because his "anxiety is getting pretty severe" and he "hardly leaves his apartment." Tr. 348. Plaintiff's mother has tried to teach Plaintiff how to do his own grocery shopping, but "he tends to buy things such as candy and soda." Tr. 349. Plaintiff's mother tries to get Plaintiff to walk for exercise, but he "complains about his back and his feet hurting." Tr. 349.

The ALJ gave partial weight to the statements of Plaintiff's mother. The ALJ accounted for Plaintiff's limitations noted by his mother as follows: Plaintiff's lapses in personal hygiene by limiting his social interaction in the workplace; Plaintiff's inability to follow multi-step instructions by limiting him to "simple, routine instructions that can be learned within 30 days"; and Plaintiff's limited math

and language skills by limiting him to GED Level 1 jobs. The ALJ noted the impression of Plaintiff's mother that Plaintiff was unable to maintain employment because of his impairments was inconsistent with the opinion of Plaintiff's Job Developer Coach at the Office of Vocational Rehabilitation who indicated after "working with [Plaintiff] over the past two years [that Plaintiff] may be sabotaging his attempts at working. . . . [E]ach time he came close to be [*sic*] hired, he would pull back and make excuses. If [the Office of Vocational Rehabilitation] was able to find him employment he would quit the position (without proper notice)." Tr. 296. With respect to the statements of Plaintiff's mother about Plaintiff's foot and back pain the ALJ also noted examining podiatrist Rex Smith, D.P.M., and examining occupational therapist Christopher Park opined Plaintiff could perform light work despite Plaintiff's complaints of foot and back pain.

On this record the Court concludes the ALJ did not err when she partially rejected the statements of Plaintiff's mother because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**B.    Crystal G.**

Plaintiff's sister, Crystal G., states in her November 8, 2016, letter that Plaintiff has difficulty performing activities such as housework, grocery shopping, personal hygiene,

using a car, and being alone. Tr. 346. Plaintiff's sister notes Plaintiff struggles to perform tasks even when the task is written down. According to Plaintiff's sister, Plaintiff has few personal relationships, and the relationships he has are over 20 years old because he "does not make new relationships easily." Tr. 346. Plaintiff's sister notes she has "observed high-levels of anxiety" when Plaintiff is in new places or around new people.

The ALJ gave partial weight to the statements of Plaintiff's sister. The ALJ accounted for Plaintiff's limitations noted by his sister as follows: Plaintiff's lapses in personal hygiene by limiting his social interaction in the workplace; Plaintiff's inability to follow multi-step instructions by limiting him to "simple, routine instructions that can be learned within 30 days"; and Plaintiff's limited math and language skills by limiting him to GED Level 1 jobs. The ALJ, however, noted the record contains several references that contradict the statement of Plaintiff's sister as to Plaintiff's ability to prepare simple meals, to shop, and to drive.

On this record the Court concludes the ALJ did not err when she partially rejected the statements of Plaintiff's sister because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II. The ALJ did not err when she partially rejected the opinions of Drs. Pethick and Alvord.**

Plaintiff asserts the ALJ erred when she partially rejected the opinions of Drs. Pethick and Alvord.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

**A.    Dr. Pethick**

On June 21, 2012, Dr. Pethick conducted a psychological evaluation of Plaintiff. Dr. Pethick reported Plaintiff had a full-scale IQ of 84, a moderately elevated score on the Beck Depression Inventory, a mildly elevated score on the Beck Anxiety Inventory, and "symptoms of inattention and impulsivity currently below the clinical threshold for a diagnosis of AD/HD." Tr. 358. Dr. Pethick found Plaintiff had "clear evidence of a learning disability . . . [and] experiences significant difficulty with written language and mathematics." Tr. 361. Dr. Pethick opined Plaintiff "has the cognitive ability to successfully manage a

15- OPINION AND ORDER

certain range of employment settings, although his learning disability . . . may pose a significant barrier for certain employment settings." Tr. 361. Dr. Pethick noted Plaintiff "should not be required to rely on his writing, spelling or mathematical skills to complete job-related tasks." Tr. 361. Dr. Pethick also noted Plaintiff could benefit from various accommodations in an employment setting "includ[ing] the possibility of extra time to complete tasks[;] being provided with clear, spoken and appropriately written instructions for job tasks[;] being provided with a calculator . . .[; and] use of a spell-checker." Tr. 361.

The ALJ adopted the part of Dr. Pethick's opinion that Plaintiff should be limited to employment that does not require him to rely on writing, spelling, or mathematics. The ALJ, however, did not adopt that portion of Dr. Pethick's opinion in which he raised the "possibility" of additional accommodations because the ALJ concluded she had accounted for those limitations by limiting Plaintiff to simple, routine tasks that Plaintiff can learn in 30 days and to GED Level 1 tasks. The ALJ also noted Pamela Roman, Ph.D., examining psychologist, reported in her November 2014 psychodiagnostic assessment of Plaintiff that Plaintiff is able to understand and to remember simple instructions, and "[i]f he is given tasks appropriate to his intellectual functioning . . . there is no evidence to suggest

[Plaintiff] could not maintain attention and concentration throughout a normal work week and work day." Tr. 417.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Pethick's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

    **B.    Dr. Alvord**

On October 21, 2016, Dr. Alvord conducted a psychological evaluation of Plaintiff. Dr. Alvord noted Plaintiff lives alone; is able to drive; has two friends; plays video games and watches television; and reports enjoying hunting, fishing, and camping although his physical limitations "make that somewhat more difficult." Tr. 474. Plaintiff's mother informed Dr. Alvord that Plaintiff is a "very poor housekeeper" who "only cleans up when [she] come[s] over and make[s] him." Tr. 474. Plaintiff relies on his mother to take him grocery shopping and to remind him about appointments. Dr. Alvord noted Plaintiff was "disheveled and slightly malodorous. His dentition was poor." Tr. 474. Plaintiff was "cooperative and fairly engaging although initially anxious." Tr. 474. Plaintiff's long-term, short-term, and "immediate/working" memories were "intact." Tr. 475. Dr. Alvord concluded Plaintiff meets the criteria for a recurrent major depressive disorder and an anxiety disorder not otherwise specified. Dr. Alvord noted Plaintiff would not have difficulty

performing simple and repetitive tasks, but he would have difficulty performing complex tasks, accepting instruction from supervisors, interacting with coworkers or the public, performing work activities on a consistent basis "without special or additional instructions/accommodations," maintaining regular attendance, completing a normal workday or work week "without interruptions from a psychiatric condition," and dealing with "usual stress encountered in the workplace."  Tr. 476-77.  Dr. Alvord concluded "the combination [of Plaintiff's] psychiatric, neurocognitive and physical symptoms . . . lead [him] to believe that [Plaintiff] will struggle to find or maintain employment in the not too distant future.  His prognosis is considered guarded."  Tr. 476.

The ALJ declined to adopt those portions of Dr. Alvord's report in which he opined Plaintiff's prognosis is "guarded," that Plaintiff would have difficulty accepting instructions from supervisors or interacting appropriately with coworkers and the public, and that Plaintiff would have difficulty maintaining regular attendance.  The ALJ accommodated Plaintiff's issues with personal hygiene and his "expressed preference to work on his own" that could create issues with coworkers and supervisors by limiting Plaintiff to "isolated work settings that involve only occasional public contact, and no direct work with the public"; "occasional direct co-worker

18- OPINION AND ORDER

interaction," but avoiding "cooperative work tasks"; and "occasional supervisor contact."  Tr. 17.  The ALJ also limited Plaintiff to simple and repetitive tasks, which Dr. Alvord stated Plaintiff could perform.

The Court concludes on this record that the ALJ did not err when she partially rejected Dr. Alvord's opinion because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

### III. The ALJ's error at disposing of Plaintiff's DIB claim at Step Two was harmless.

Plaintiff asserts the ALJ erred when she disposed of Plaintiff's DIB claim at Step Two.  Defendant concedes the ALJ should have found Plaintiff's intellectual and learning disorders to be severe impairments as of his date last insured at Step Two. Defendant, however, asserts the error is harmless because that finding would not have altered the ALJ's ultimate determination that Plaintiff is not disabled even if the ALJ had resolved Step Two of the DIB claim in Plaintiff's favor.

The Court may only find harmless error when it is clear from the record that the ALJ's error is "inconsequential to the ultimate nondisability determination."  *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

As noted, the ALJ conducted the entire five-step analysis as to Plaintiff's impairments in the context of his SSI applications, which was based on the same impairments as those

19- OPINION AND ORDER

alleged in support of Plaintiff's DIB application. The Court, therefore, concludes even though the ALJ erred when she found at Step Two that Plaintiff's intellectual and learning disorders were not severe impairments as of his date last insured, the error was harmless because a finding in Plaintiff's favor on that issue would not have altered the ALJ's ultimate determination that Plaintiff is not disabled.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 3rd day of June, 2019.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge